```
USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: Mar. 18, 2014
```

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**
----------------------------------- X
UNITED STATES OF AMERICA,            :
                                     :
          -v.-                       :          S4 11 Cr. 912
                                     :
DARREN MORRIS,                       :          **OPINION & ORDER**
                                     :
                    Defendant.       :
----------------------------------- X

Appearances

For United States of America
     Preet Bharara
     United States Attorney, Southern District of New York
     By:  Christopher J. DiMase

For Defendant Darren Morris
     Donald Yannella


**JOHN F. KEENAN, United States District Judge:**

        Defendant Darren Morris made several pretrial motions

seeking (1) an evidentiary hearing regarding the police

procedures used to identify him, and the suppression of the

evidence arising out of that identification; (2) severance[1] of

Count Four of the indictment, which charges him with being a

felon in possession of a firearm; and (3) sanctions and other

measures relating to the loss of certain audio evidence.  At a

conference on March 12, 2014, this Court advised the parties

---

[1] Defendant also moved for severance from the other defendants in this
case.  As noted below, this request is moot because the other
defendants have since pled guilty to the charges against them.

that the motions were denied.  This Opinion memorializes those rulings and sets forth the Court's reasoning.

## I.    Background

In a fourth superseding indictment dated January 8, 2013, Defendant is charged with conspiracy to commit robbery; two counts of attempted robbery; two counts of use and possession of a firearm, which was discharged; being a felon in possession of a firearm; and a narcotics conspiracy.  The Government hopes to prove the following allegations at trial.  At approximately 9:00 P.M. on November 13, 2009, Defendant and two co-conspirators forced "Victim-1" into a residence at gunpoint.  In the basement, Morris asked "Victim-2" about the location of marijuana or marijuana proceeds.  He struck Victim-2 several times on the head with the gun, discharging the gun once, before searching the residence.

When the police arrived, Defendant and his co-conspirators allegedly fled through the residence's rear door.  After their descriptions were wired to area police units, officers in an unmarked police car observed Morris walking nearby.  Officer Daniel Beddows, also referred to as "Officer-1," exited the car and began to pursue Morris, who fled and fired several shots at the officer.  Although Defendant temporarily evaded Beddows, he was soon stopped by other officers behind a nearby residence.

When Beddows arrived at that residence, he identified Defendant as the man who had shot at him.

## II.  Discussion

### A.   The Identification Evidence

Pretrial identifications are subject to a one- or two-step inquiry.  "The first question is whether the pretrial identification procedures were unduly suggestive of the suspect's guilt." United States v. Maldonado-Rivera, 922 F.2d 934, 973 (2d Cir. 1990).  If not, the identification is "generally admissible without further inquiry into the reliability of the pretrial identification." Id.; see also Jarrett v. Headley, 802 F.2d 34, 42 (2d Cir. 1986).  "If the pretrial procedures were unduly suggestive, the analysis requires a second step; the court must then weigh the suggestiveness of the pretrial process against factors suggesting that an in-court identification may be independently reliable rather than the product of the earlier suggestive procedures." Maldonado-Rivera, 922 F.2d at 973 (listing various reliability factors to consider).

As to whether a photo array is impermissibly suggestive, "the principal question is whether the picture of the accused, matching descriptions given by the witness, so stood out from all of the other photographs as to 'suggest to an identifying witness that [that person] was more likely to be the culprit.'"

3

Jarrett, 802 F.2d at 41 (quoting United States v. Archibald, 734 F.2d 938, 940 (2d Cir. 1984)).  Courts also consider whether the number of photos used was suggestive. See, e.g., United States v. Bennett, 409 F.2d 888, 898-99 (2d Cir. 1969) (finding that an array of six photos was not impermissibly suggestive).  There is no requirement "that all of the photographs in the array be uniform with respect to a given characteristic." Jarrett, 802 F.2d 34, 41 (2d Cir. 1986); see also United States v. Bubar, 567 F.2d 192, 199 (2d Cir. 1977) ("The due process clause does not require law enforcement officers to scour about for a selection of photographs so similar in their subject matter and composition as to make subconscious influences on witnesses an objective impossibility.").

An evidentiary hearing on the suggestiveness of an identification procedure is necessary only when a defendant meets his "burden of stating sufficient facts which, if proven, would require the granting of the relief requested." United States v. Richardson, 837 F. Supp. 570, 573 (S.D.N.Y. 1993) (citing United States v. Culotta, 413 F.2d 1343, 1345 (2d Cir. 1969)) (internal quotations and alterations omitted); United States v. Ruggiero, 824 F. Supp. 379, 396 (S.D.N.Y. 1993) (no need for an evidentiary hearing where defendant fails to make a "threshold showing of suggestiveness").

In the instant case, the Court first observes that issues surrounding the identification have been complicated by the "Bronx County Notices & Voluntary Disclosure Form" ("VDF") prepared by a Bronx assistant district attorney before the U.S. Attorney's Office took over the prosecution of this case.  The VDF indicates that Defendant was identified by means of a "corporeal non-lineup" at 10:00 A.M. on November 13, 2009. (Def. Ex. A at 1.)  The Government now contends that the VDF is inaccurate in nearly every respect.  As the Government points out, Defendant could not have been identified at 10:00 A.M. on November 13, 2009, because such an identification would have preceded the robbery that allegedly occurred later that night. The Government further asserts that no "corporeal non-lineup" occurred at all, and supports this assertion with the affirmation of Christine Scaccia, the assistant district attorney who prepared the VDF. (Gov. Br. Attachment 4.)  Scaccia affirms under penalty of perjury that the description of the identification of Defendant is "incorrect and was a clerical error." (Id. ¶ 5.)  Given this affirmation, the veracity of which is not disputed by Defendant, and the obvious inaccuracy of the VDF, the Court concludes that the VDF should be disregarded.

The Court now turns to an analysis of the identification procedures which actually took place in this case.  An

affirmation by Detective Richard Carrasquillo, signed under
penalty of perjury, sets forth the positive identifications of
Morris. (Gov. Br. Attachment 1.)  As mentioned earlier,
Defendant was first identified by Officer Beddows as the man who
had fired at him while attempting to flee. (Id. ¶ 3.)  About
three hours later, Carrasquillo showed Victim-2 a photo array
with six photographs, including a photograph of Defendant from
2004.  Victim-2 identified Defendant as one of the participants
in the robbery. (Id. ¶ 4; Def. Ex. B.)  Two days later, however,
Victim-1 identified someone other than Defendant in a different
photo array. (Gov. Br. Attachment 2.)  The photograph of
Defendant in the latter photo array was taken on November 13,
2009, after his arrest. (Gov. Br. at 2.)

    Defendant now contends that all testimony as to these
identifications, and any in-court identification, must be
suppressed.  In the alternative, he seeks a hearing "to test the
constitutionality of the identification procedures." (Def. Br.
6.)  Specifically, he argues that the 2004 photograph of him
used in the first photo array "is unduly suggestive because it
was taken several years prior to the incident, and it depicts
braids in [his] hair," and that "[h]is appearance in the
photograph is significantly different from the night of his
arrest." (Id. at 5.)

6

This argument makes no sense.  Accepting Defendant's
premise that the 2004 photograph depicts him looking
"significantly different" than on the night of the attempted
robbery, such a discrepancy would surely inure to Defendant's
benefit, because it would decrease the likelihood of a positive
identification.  Conversely, the fact that Victim-2 was able to
identify Defendant, notwithstanding his changed appearance,
tends to bolster the reliability of the identification rather
than undermining it.  Defendant's emphasis on his braided hair
is likewise irrelevant.  All six men appearing in the first
photo array have braided hair, so Victim-2 cannot have chosen
Defendant's photograph on that basis alone. See Jarrett, 802
F.2d at 41.

For these reasons, Defendant's contention that the outdated
photograph is "unduly suggestive" is rejected.  As such, there
is no reason to inquire further into the reliability of the
pretrial identification. Maldonado-Rivera, 922 F.2d at 973.
Additionally, because Defendant has failed to make a threshold
showing of suggestiveness, there is no need for an evidentiary
hearing. See Ruggiero, 824 F. Supp. at 396.

**B.   The Felon-in-Possession Count**

Defendant makes two requests for severance under Rule 14(a)
of the Federal Rules of Criminal Procedure.  He first moves for
severance of his trial from that of co-defendants Patrick Lewis

7

and Michael Campbell.  Because those co-defendants have pled
guilty, they will not be tried on the counts alleged in the
superseding indictment.  Accordingly, this portion of the motion
is moot.

Defendant also seeks to sever Count Four of the indictment,
which charges him with being a felon in possession of a weapon
in violation of 18 U.S.C. § 922(g)(1), from the other counts
against him.  He notes that to prove this count, the Government
will have to introduce evidence of one of his prior felony
convictions.  Defendant argues that this evidence will unduly
prejudice him because the jury may take it into account when
determining his guilt as to the other counts.

The Government responds that it may wish to introduce
evidence of the convictions under Rule 404(b) of the Federal
Rules of Evidence to demonstrate Defendant's knowledge or
intent, if he disputes either of these issues at trial. (Gov't
Br. at 18 (citing cases).)  The Government therefore counsels
delay in ruling on Defendant's motion.

An indictment may properly charge a defendant with more
than one offense if those offenses are "based on the same act or
transaction, or are connected with or constitute parts of a
common scheme or plan." Fed. R. Crim. P. 8(a); see United States
v. Ruiz, 894 F.2d 501, 505 (2d Cir. 1990).  The district court
may nevertheless sever a properly joined count under Rule 14 if

the defendant carries his "heavy burden of showing that joinder will result in substantial prejudice." United States v. Amato, 15 F.3d 230, 237 (2d Cir. 1994) (citations omitted).  However, "less drastic measures than severance, such as limiting instructions, often will suffice to cure any risk of prejudice and permit joinder." United States v. Page, 657 F.3d 126, 129 (2d Cir. 2011) (citing Zafiro v. United States, 506 U.S. 534, 539 (1993)).  Ultimately, the matter "is addressed to the discretion of the trial court, and the sound exercise of that discretion is virtually unreviewable." Amato, 15 F.3d at 237 (citations and alterations omitted).  Relevant factors to be considered include whether the joinder of counts is proper, whether separate trials would require much of the same evidence, and whether the danger of unfair prejudice may be limited by alternative measures. See Page, 657 F.3d at 130-31.

Turning to the instant case, the Court does not agree with the Government that consideration of Defendant's motion should be delayed until trial.  Regardless of whether the Government eventually seeks to admit evidence of the prior felonies under Rule 404(b), the circumstances of this case do not require severance of Count Four.

Count Four charges Defendant with possessing a firearm on November 13, 2009.  This is the same day as the first overt act charged in Count One, which alleges that Defendant and others

9

attempted to rob marijuana dealers at gunpoint.  It is also the
same day as the attempted robbery charged in Count Two, and the
use and possession of a firearm charged in Count Three.  It is
therefore plain that the conduct charged in Count Four is
related to the conduct charged in the other counts; thus, Count
Four is properly joined. See Ruiz, 894 F.2d at 505 (joinder
proper where the counts have "sufficient logical connection").
It is equally obvious that these counts will involve the same
evidence, i.e., the gun. See Page, 657 F.3d at 130; United
States v. Blakney, 941 F.2d 114, 116 (2d Cir. 1991) ("Joinder is
proper where the same evidence may be used to prove each
count.")

Moreover, any prejudice to Defendant can be limited at
trial through "less drastic measures" than severance. Zafiro,
506 U.S. at 539.  Assuming that evidence relating to Defendant's
prior felonies is not introduced under Rule 404(b), the jury may
simply be told that he has previously been convicted of a felony
"without any information relating to the underlying nature or
facts of the offense, and without any suggestion that [he] had
more than one prior conviction." Page, 657 F.3d at 130.
Additionally, the Court can deliver a comprehensive limiting
instruction telling the jury that they may consider the prior
conviction only as to the "prior felon" part of Count Four, and
not for any other count or even to prove possession in Count

Four.  These measures have been recognized and approved by the Second Circuit as minimizing the danger of unfair prejudice. <u>Id.</u> at 130–31.  Here, Defendant has not demonstrated why these steps would be insufficient to guard him against the substantial prejudice of spillover.  <u>See</u> <u>Amato</u>, 15 F.3d at 237.  He therefore has not met his heavy burden under Rule 14, and his motion for severance is denied.

### C.  The Audio Evidence

Finally, Defendant moves for spoliation sanctions because audio evidence relating to his case was not preserved, including 911 calls and police radio transmissions.  He requests remedies including dismissal of the indictment, preclusion of witness testimony, and an adverse inference jury instruction.

The Government responds that the recordings were deleted in the normal course, before the U.S. Attorney's Office's involvement in the case.  It offers an affirmation from Eli Vitrano, an agent of the Bureau of Alcohol, Tobacco, Firearms, and Explosives. (Gov. Br. Attachment 3.)  Vitrano represents under penalty of perjury that subpoenas were served on the NYPD's Tapes and Records Unit (the "TRU") as well as its Document Production Unit (the "DPU").  Vitrano states that a TRU employee told him the recordings had been destroyed, as is routine after approximately six months, and that the DPU was also unable to locate any recordings. (<u>Id.</u>)  The Government also

11

points out that it has produced copies of the "sprint" reports of the recordings that once existed.  It argues that these written reports are a "reasonable substitute" for the actual recordings. (Gov. Br. at 15.)  The Government also asserts that the recordings might well have tended to incriminate Defendant rather than exculpate him.

The Second Circuit has held that whether the loss of evidence "warrants sanctions depends on the Government's culpability for the loss and its prejudicial effect." United States v. Rahman, 189 F.3d 88, 139 (2d Cir. 1999) (citing United States v. Bakhtiar, 994 F.2d 970, 975–76 (2d Cir. 1993)).  In this case, there is no evidence that the Government (that is, the U.S. Attorney's Office) destroyed the recordings, nor is there anything to suggest that these recordings contained exculpatory or impeachment evidence. See United States v. Grammatikos, 633 F.2d 1013, 1019–21 (2d Cir. 1980) (no sanctions where government's culpability was "not great" and destruction appeared innocent); Southerland v. Gourd, 269 F. Supp. 2d 48, 52 (E.D.N.Y. 2003) ("Accepting the premise that the prosecution had a duty to preserve the 911 tape, this court nonetheless notes that petitioner has offered no compelling explanation for why the tape itself would prove material to his defense or would have helped in any way to impeach [the witness's] testimony."). Moreover, the defense may use the sprint reports at trial to

impeach the Government's witnesses, just as it might have
otherwise used the audio recordings. See Deans v. Ercole, No. 09
Civ. 56, 2010 WL 1010743, at *9 (E.D.N.Y. Mar. 15, 2010);
Southerland, 269 F. Supp. 2d at 52.  Under the circumstances of
this case, then, the sanctions requested by Defendant are not
appropriate.  The motion is denied.

### III. Conclusion

For the foregoing reasons, the Court has denied Defendant's
motions regarding the identification evidence, for severance,
and for sanctions relating to certain audio recordings.  The
next conference in this matter is scheduled for March 25, 2014,
at 12:00 PM.


**SO ORDERED.**

Dated:    New York, New York
          March 18, 2014

                                    John F. Keenan
                                    United States District Judge

13